UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| Ross W. Greene, Ph.D., )<br>)<br>Plaintiff, )<br>)<br>v. )<br>)<br>J. Stuart Ablon and the General Hospital )<br>Corporation d/b/a Massachusetts General )<br>Hospital, )<br>)<br>Defendants. )<br>) | CIVIL ACTION NO.: 09-CV-10937-DJC |

**PLAINTIFF'S RESPONSE TO THE LOCAL RULE 56.1 STATEMENT OF MATERIAL
UNDISPUTED FACTS OF THE DEFENDANT, J. STUART ABLON**

I. Introduction

Pursuant to Local Rule 56.1, the Plaintiff responds to the Statement of Undisputed Facts of the Defendant, J. Stuart Ablon ("Defendant's Fact Statement") as follows. Of the answers of the defendant J. Stuart Ablon the plaintiffs first set of interrogatories, dated May 7, 2010 is attached hereto as Exhibit "A". A true and accurate copy of Dr. Ablon's answer to the amended complaint dated September 21, 2009 is attached hereto as Exhibit "B". A true and accurate copy of the affidavit of Dr. Ablon in opposition to Greene's dissection brief, dated November 30, 2011 is attached hereto as Exhibit "C". A true and accurate copy of the plaintiff's response to the first set of interrogatories by MGH is attached hereto as Exhibit "D". A true and accurate copy of the affidavit of Ross W Greene, PhD, dated September 28, 2011 is attached hereto as Exhibit "E".

1

| DR. ABLON'S STATEMENT OF MATERIAL UNDISPUTED FACT | SOURCE(S) CITED IN DR. ABLON'S STATEMENT | DEFENDANT'S RESPONSE | SOURCE(S) SUPPORTING DEFENDANT'S RESPONSE |
|---|---|---|---|
| The plaintiff, Ross Greene, contends that "he created the treatment model that became known as the Collaborative Problem Solving Approach (the 'CPSA'). | Amended Verified Complaint, ¶ 9. | Uncontested. | Not Applicable. |
| There is no evidence that Dr. Greene holds a copyright registration for the CPSA, issued by the United States Copyright Office. | No Source Cited. | Contested. CPSA, as described by Greene, is protected pursuant to Greene's copyright in *The Explosive Child*. | Greene Dissection Brief, Doc. No. 58, at 18-23, Exhs. 51, 52. |
| Dr. Greene does not hold a copyright registration for any of the PowerPoint slides that he contends he created or for the other "Greene Materials". | Amended Verified Complaint ¶¶ 81-82 | Contested. The slides are copyright protected by Greene's copyright in *The Explosive Child*. | Greene Dissection Brief, Doc. No. 58, at 12-15. |
| Dr. Ablon is an employee of the defendant, The General Hospital Corporation d/b/a Massachusetts General Hospital (the "Hospital"). | Affidavit of J. Stuart Ablon, filed November 30, 2011 pars. 3 & 40 | Uncontested that Dr. Ablon is now some unspecified type of employee of MGH. Contested that all of his professional or business activities are conducted, either now or in the past, within the scope of that unspecified "employment" relationship. Dr. Ablon served as Co-Director of the Center for CPA until his resignation and remains 50% owner for the S-corp under the auspices of which some or all of the CPSA were developed. "Each of us owned half of the stock of those two Massachusetts corporation [the CPS Clinic and the Center for Collaborative Problem Solving]" "The Center was a separate, closely-held corporation…." | Answer of the Defendant J. Stuart Ablon to Plaintiff's First Set of Interrogatories, Answer to Interrogatory No. 8. Greene Opposition to Ablon Motion for Partial Summary Judgment, filed simultaneously herewith, at 7-8, and Fn. 10, and citations therein. Exh. B, at 4-5. Exh. C, ¶18. Exh. B at 4-5. |

| | | | |
|---|---|---|---|
| | | "We both ran private practices from that space while still on staff at the hospital. Dr. Greene eventually asked me to join him in signing a new lease for the office space when the old lease expired, which I did." | Exh. C, ¶ 9. |
| Along with Dr. Greene, he founded, in 2002 or 2003, what is now called Think:Kids, which had been named the Collaborative Problem Solving Institute. | Affidavit of J. Stuart Ablon, filed November 30, 2011 ¶¶ 3 & 6; Amended Verified Complaint par. 37 | Uncontested. | Not Applicable. |
| Think:Kids and the Institute are programs within the Department of Psychiatry at the Hospital. | Affidavit of J. Stuart Ablon, filed November 30, 2011 pars. 3 & 6; Amended Verified Complaint ¶37 | Uncontested that Thnink:Kids is currently some type of unspecified "program" within the MGH Department of Psychiatry.<br><br>Contested that the Institute currently is a program within that department and as to any implicit definition of what being some type of unspecified "program" within that department means or as to what organization or legal entity attributes are associated with it.<br><br>"…Dr. Rosenbaum gave his explicit approval for Dr. Ablon and I to have a co-existing corporation outside of MGH which would also disseminate the CPS model and was made aware of that fact that both entities would share the same office space. Discussions related to the formation of the corporation, originally called the CPS Clinic and then rebranded as (and ultimately merged with) CCPSI took place in the same meeting in which the formation of the CPS Institute was discussed in 2002."<br><br>…Dr. Rosenbaum indicated by email and verbally that MGH required that, as new conditions for remaining as Director of Think:Kids, I had to bring all business from the CCPSI into the MGH, end my business relationship with CCPSI…" | Exh. D (Plaintiff's Responses to Defendant MGH's First Set of Interrogatories), Answer to Interrogatory No. 11<br><br><br><br><br><br>Exh. D (Plaintiff's Responses to Defendant MGH's First Set of Interrogatories), Answer to Interrogatory No. 18 |

| | | | |
|---|---|---|---|
| Dr. Ablon's alleged infringement occurred in connection with his employment with the Hospital. | Amended Verified Complaint ¶¶ 8, 63, 67, 69-74, 83 & 84; Ablon Aff. ¶ 40 | Contested.<br><br>"We both ran private practices from that space while still on staff at the hospital."<br><br>"…Dr. Rosenbaum gave his explicit approval for Dr. Ablon and I to have a co-existing corporation outside of MGH which would also disseminate the CPS model and was made aware of that fact that both entities would share the same office space.  Discussions related to the formation of the corporation, originally called the CPS Clinic and then rebranded as (and ultimately merged with) CCPSI took place in the same meeting in which the formation of the CPS Institute was discussed in 2002."<br><br>…Dr. Rosenbaum indicated by email and verbally that MGH required that, as new conditions for remaining as Director of Think:Kids, I had to bring all business from the CCPSI into the MGH, end my business relationship with CCPSI…" | Exh. C (Affidavit of J. Stuart Ablon in Opposition to Dissection Brief of the Plaintiff, Ross Greene), ¶9<br><br>Exh. D (Plaintiff's Responses to Defendant MGH's First Set of Interrogatories), Answer to Interrogatory No. 11; Greene Dissection Brief, Doc. No. 58, Exh. 22 and additional exhibits cited therein.<br><br><br><br><br><br><br><br>*Id.,* Answer to Interrogatory No. 18. |
| On or about April 17, 2002, Dr. Greene and Dr. Ablon signed a publishing contract with Guilford Publications for a book that became entitled *Treating Explosive Kids: the Collaborative Problem Solving Approach* ("Treating Explosive Kids"). | Verified amended complaint par. 30; Ablon Aff. ¶ 33 | Uncontested as to the signing of the contract.<br><br>Contested that the book eventually submitted to Guilford for publication was the same book envisioned at the time the contract was signed. | Greene Opposition to Ablon Motion for Partial Summary Judgment, filed simultaneously herewith, at 8-10, and citations therein. |
| Prior to entering into the Guilford contract, Dr. Greene and Dr. Ablon prepared a prospectus for the proposed book. | Ablon Aff. ¶ 32 | Contested.<br><br>No evidence that Exh. K of cited Ablon Affidavit was actually the "prospectus" for the book that became the original conceptualization for *Treating* or that it was actually sent to the agent or to Guilford.<br><br>….Dr. Ablon proved entirely unable to meaningfully participate in the drafting of Treating Explosive Kids. | Statement inaccurately summarizes the cited affidavit testimony.  Exh. C ¶ 32.<br><br><br><br><br><br>Exh. E (Affidavit of Ross W. Greene, Ph.D., dated September 30, 2011), ¶ 22 |

4

| | | | |
|---|---|---|---|
| | | Dr. Ablon indicated that he was unable to write at an appropriate model for the intended readership and was having significant difficulty describing many key facets of the content. After significant delay, Dr. Ablon, rather than delivering an acceptable manuscript, delivered to me at 'attempt' at only one chapter." | |
| | | "I was compelled … thereafter to write the book myself." | *Id.*, ¶ 24 |
| | | By the time *Treating Explosive Kids* was published on October 18, 2005, Dr. Ablon actual contribution to the work was less than fifteen pages in a work consisting of 226 pages of text. | *Id.*, ¶ 27 |
| The prospectus states, in part, as follows: "Dr. Green and his co-author, J. Stuart Ablon, PhD, are both affiliated with the Department of Psychiatry at Massachusetts General Hospital and Harvard Medical School…" | Ablon Aff., Exh. K, RG006031 | <u>Uncontested</u> as to the fragment of the document referenced in this statement.<br><br><u>Contested</u> as to any implication the word co-author means co-author of a joint work, or that "affiliated" describes an employment relationship. | Greene Opposition to Ablon Motion for Partial Summary Judgment, filed simultaneously herewith, at 8-11, and citations therein. |
| | | "We both ran private practices from that space while still on staff at the hospital. Dr. Greene eventually asked me to join him in signing a new lease for the office space when the old lease expired, which I did." | Exh. C (Affidavit of J. Stuart Ablon in Opposition to Dissection Brief of the Plaintiff, Ross Greene), ¶ 9 |
| | | "…Dr. Rosenbaum gave his explicit approval for Dr. Ablon and I to have a co-existing corporation outside of MGH which would also disseminate the CPS model and was made aware of that fact that both entities would share the same office space. Discussions related to the formation of the corporation, originally called the CPS Clinic and then rebranded as (and ultimately merged with) CCPSI took place in the same meeting in which the formation of the CPS Institute was discussed in 2002." | Exh. D (Plaintiff's Responses to Defendant MGH's First Set of Interrogatories), Answer to Interrogatory No. 11 |

5

|  |  |  |  |
|---|---|---|---|
| The Guilford contract was signed by both Dr. Greene and Dr. Ablon as well as the publisher. | Ablon Aff., Exh. L, RG084440 | <u>Uncontested.</u> | Not Applicable. |
| Both Dr. Greene and Dr. Ablon signed, jointly, as the "Author." | Ablon Aff., Exh. L, RG084440 | <u>Uncontested</u> as to this designation on the contract document.<br><br><u>Contested</u> as to any inference as to what type of "author" work for copyright purposes.<br><br>"The book actually published by Guilford was entirely different than the one Guilford, Dr. Ablon and I signed at the time the Guilford Contract was signed.  The work as originally conceived was anticipated to include a material contribution by Dr. Ablon.  The work that was actually published was authored solely and exclusively by me, with, at best, a *de minimis* 'contribution' by Dr. Ablon" | Exh. E (Affidavit of Ross W. Greene, Ph.D., dated September 30, 2011),  ¶ 28<br><br>*Id.* |
| The contract identifies Dr. Greene and Dr. Ablon, jointly, as the "Author." | Ablon Aff., Exh. L, RG084440, RG 08432 and 08440 | <u>Contested</u> as to the meaning of the contract document, which speaks for itself, and specifically as to any reference to joint authorship of any particular type of work for copyright purposes..<br><br>"The book actually published by Guilford was entirely different than the one Guilford, Dr. Ablon and I signed at the time the Guilford Contract was signed.  The work as originally conceived was anticipated to include a material contribution by Dr. Ablon.  The work that was actually published was authored solely and exclusively by me, with, at best, a *de minimis* 'contribution' by Dr. Ablon"<br><br>"The agent representing Dr. Ablon and I, Wendy Lipkind of the Wendy Lipkind Agency, was made aware | *Id.*<br><br><br><br><br><br><br><br><br><br><br><br><br><br><br><br><br><br><br><br>*Id.* |

6

| | | | |
|---|---|---|---|
| | | of the change in the nature of the book that would be produced under the contract with Guilford." "Not only did Guilford fail to register any of the copyrights for the book in the author's names as the contract required (registering them instead in its own name), but it also failed to describe the nature of authorship to accurately reflect the nature of the work." | |
| Dr. Greene added, in his handwriting, a requirement that the publisher would register the copyright "in the Author's names." | Ablon Aff., Exh. L, RG084440, RG 08432 ,08440, RG08433 | <u>Contested</u> that the handwriting was Greene's. | Hearsay.  Statement does not accurately reflect statement in the cited affidavit, *see* Exh. C, ¶ 32, and affidavit does not say that Ablon observed Greene handwrite the subject notation. |
| | | "Guilford drafted the contract listing me and Dr. Ablon as co-authors. The Guilford contract required Guilford to register copyrights for the work in the name of co-authors." | Exh. E, ¶ 21. |
| | | "The book actually published by Guilford was entirely different than the one Guilford, Dr. Ablon and I signed at the time the Guilford Contract was signed.  The work as originally conceived was anticipated to include a material contribution by Dr. Ablon.  The work that was actually published was authored solely and exclusively by me, with, at best, a *de minimis* 'contribution' by Dr. Ablon" | Exh. E, ¶ 28. |
| | | "The agent representing Dr. Ablon and I, Wendy Lipkind of the Wendy Lipkind Agency, was made aware of the change in the nature of the book that would be produced under the contract with Guilford." "Not only did Guilford fail to register any of the copyrights for the book in the author's names as the contract required (registering them instead in its own name), but it also failed to describe the nature of authorship to accurately reflect the nature of the work." | *Id.* |

7

| | | | |
|---|---|---|---|
| The copyright registration was issued on November 21, 2005, reflecting an initial date of publication of October 18, 2005. | November 30, 2011 affidavit of Dustin F. Hecker, Exh. A, see also, Exhibit C to "plaintiff's reply to defendant's opposition to plaintiff's dissection brief. Document numbers 79 and 84 respectively. | <u>Uncontested.</u> | Not Applicable. |
| The copyright registration lists both Dr. Greene and Dr. Ablon as "author" of the "Entire Text" of the book. | Exhibit C to plaintiff's reply, at p.2; accord, Hecker Aff., Exh. A | <u>Uncontested</u> as to these designations.<br><br><u>Contested</u> as to their accuracy.<br><br>"Not only did Guilford fail to register any of the copyrights for the book in the author's names as the contract required (registering them instead in their own name), but it also failed to describe the nature of the authorship to accurately reflect the work." | Exh. E, ¶ 28. |
| The copyright notation contained in the book states as follows: " © 2006 Ross W. Greene and J. Stuart Ablon." | Ablon Aff., Exh.A, RG00679 | <u>Uncontested as to the notation.</u><br><br><u>Contested as to accuracy.</u> | Greene Opposition to Ablon Motion for Partial Summary Judgment, filed simultaneously herewith, at 10, and citations therein. |
| Dr. Greene and Dr. Ablon have always shared the royalties paid from sales of the book. | Ablon Aff. p. 36 | <u>Uncontested.</u> | Not Applicable. |
| The website of their former business listed both of them as co-authors of the book. | Ablon Aff. p. 37 | <u>Contested.</u><br><br>The site did not always do so, nor did it contain any information as to what type of work the book was, for copyright purposes, or what type of authors they were, for copyright purposes.<br><br>"Dr. Greene also revised the Center's website/trademark page to suggest that he owned the intellectual property exclusively." | Exh. A, Answer to Interrogatory No. 8. |

8

| | | | |
|---|---|---|---|
| The cover of *Treating Explosive Kids* identifies both Dr. Greene and Dr. Ablon as the authors, as do the first page of the book and the section called "About the Authors." | Ablon Aff. Exh. A, RG00674-75, 00678 and 00681-82 | <u>Uncontested</u> as to the notation on the book cover.<br><br><u>Contested</u> as to substance - the notation did not contain any information as to what type of work the book was, for copyright purposes, or what type of authors they were, for copyright purposes | Greene Opposition to Ablon Motion for Partial Summary Judgment, filed simultaneously herewith, at 10, and citations therein. |
| Dr. Greene identified Dr. Ablon as co-author of the book in some of the "Greene Materials" he contends Dr. Ablon infringed. | Greene (Dissection) Exh. 34PW, RG02724 | <u>Uncontested</u> only as to the examples cited by Defendant in his Fact Statement.<br><br><u>Contested</u> as to the word "some".<br><br>"…Dr. Ablon and I acknowledged that Treating Explosive Kids would be co-authored only in the sense that (a) contained material derived and copied from my prior works, (b) contained some new material contributed by me which was not derived from my prior works, and (c) contained only a small amount of new material contributed by Dr. Ablon which was not derived from my prior works.  We both intended, and I intended in particular, that *Treating Explosive Kids* would be a derivative work of *The Explosive Child* and that any independent copyrights Dr. and I might receive as a result of this publication would pertain to the new and original material we contributed, which was not derived from my prior works." | Exh. E, ¶ 25. |
| Dr. Greene identified Dr. Ablon as co-author of *Treating Explosive Kids* in his CV, dated September 22, 2005. | Hecker Aff., Exh. A, RG05596 and 05633 | <u>Uncontested</u> as to the wording on that particular version of Dr. Greene's CV.<br><br><u>Contested</u> as to (a) whether Dr. Greene ever used that CV for any purpose; and (b)  as to the meaning of the phrase "co-author", as the CV did not contain any information as to what type of work the book was, for copyright purposes, or what type of authors they were, for copyright purposes<br><br>"…Dr. Ablon and I acknowledged that Treating Explosive Kids would be co-authored only in the sense | RG 05596, 05633<br><br><br><br><br><br><br><br><br><br>Exh. E, ¶ 25. |

9

| | | | |
|---|---|---|---|
| | | that (a) contained material derived and copied from my prior works, (b) contained some new material contributed by me which was not derived from my prior works, and (c) contained only a small amount of new material contributed by Dr. Ablon which was not derived from my prior works.  We both intended, and I intended in particular, that *Treating Explosive Kids* would be a derivative work of *The Explosive Child* and that any independent copyrights Dr. and I might receive as a result of this publication would pertain to  the new and original material we contributed, which was not derived from my prior works." | |
| | | "At no time during my work with Dr. Ablon on Treating Explosive Kids did I intend to provide Dr. Ablon with copyrights in any of my preexisting works which Treating Explosive Kids would reference and/or which would be derived from it.  I oversaw all editorial revisions for this book, was the sole contact with the editor, and was solely responsible for revisions.  Dr. Ablon made no additional contributions to this work after his initial submissions." | Exh. E, ¶ 25. |
| Dr. Greene's CV was submitted to the hospital less than a month before the book was published. | No Source Cited. | <u>Contested.</u><br><br>Defendant has failed to provide any citation, reference or document in support of this fact. | Unsupported by any Defendant citation. |
| An attachment to the CV states, in part, as follows: "a forthcoming book for mental health clinicians, *Treating Explosive Kids: The Collaborative Problem Solving Approach*, was written in collaboration with my colleague, Dr. Stuart Ablon." | Hecker Aff., Exh. A, RG05596 and 05633, RG05596 | <u>Uncontested</u> as to the wording on that particular version of Dr. Greene's CV.<br><br><u>Contested</u> as to (a) whether Dr. Greene ever used that CV for any public purpose; and (b)  as to the meaning of the phrase "collaboration" as the CV did not contain any information as to what type of work the book was, for copyright purposes, or what type of collaborators Dr. Greene and Dr. Ablon were, for copyright purposes | RG 05596, 05633 |

10

| | | | |
|---|---|---|---|
| Paragraph 34 of Dr. Greene's amended verified complaint states, in part, that "the work as originally conceived was anticipated to be a genuine work of co-authorship by Drs. Greene and Ablon. | Amended Verified Complaint ¶ 34 | <u>Uncontested</u> as to the wording.<br><br><u>Contested</u> as to the implication that the book actually submitted was consistent with "the work as originally anticipated" and therefore a work of co-authorship | |
| | | "…Dr. Ablon and I acknowledged that Treating Explosive Kids would be co-authored only in the sense that (a) contained material derived and copied from my prior works, (b) contained some new material contributed by me which was not derived from my prior works, and (c) contained only a small amount of new material contributed by Dr. Ablon which was not derived from my prior works.  We both intended, and I intended in particular, that *Treating Explosive Kids* would be a derivative work of *The Explosive Child* and that any independent copyrights Dr. and I might receive as a result of this publication would pertain to  the new and original material we contributed, which was not derived from my prior works." | Exh. E, ¶ 25. |
| | | "At no time during my work with Dr. Ablon on Treating Explosive Kids did I intend to provide Dr. Ablon with copyrights in any of my preexisting works which Treating Explosive Kids would reference and/or which would be derived from it.  I oversaw all editorial revisions for this book, was the sole contact with the editor, and was solely responsible for revisions.  Dr. Ablon made no additional contributions to this work after his initial submissions." | *Id.* |
| | | "….Dr. Ablon proved entirely unable to meaningfully participate in the drafting of Treating Explosive Kids.  Dr. Ablon indicated that he was unable to write at an appropriate model for the intended readership and was having significant difficulty describing many key facets of the content. | Exh. E, ¶ 22. |

11

| | | After significant delay, Dr. Ablon, rather than delivering an acceptable manuscript, delivered to me at 'attempt' at only one chapter." | |
| --- | --- | --- | --- |
| | | "I was compelled thereafter to write the book myself." | Exh. E, ¶ 24. |
| Paragraph 90 of the amended verified complaint contains the following statement: "Dr. Ablon's intentional and deliberate exploitation of the joint copyright held by he and Dr. Greene…." | Amended Verified Complaint ¶ 90 | <u>Uncontested</u> as to the wording.<br><br><u>Contested</u> as to the implication that the phrase is an admission, as it is contained in a Count pleading alternative relief, and work actually submitted was consistent with "the work as originally anticipated" and therefore not a joint work. | Greene Opposition to Ablon Motion for Partial Summary Judgment, filed simultaneously herewith, at 12-13, and citations therein. |
| In each of the paragraphs 93 and 94 of the amended verified complaint, Dr. Greene stated the following: "as a co-owner of the copyright for *Treating Explosive Kids*, Dr. Greene…" | Amended Verified Complaint ¶¶ 93 and 94 | <u>Uncontested</u> as to the wording.<br><br><u>Contested</u> as to the implication that the phrase is an admission, as it is contained in a Count pleading alternative relief, and work actually submitted was consistent with "the work as originally anticipated" and therefore not a joint work. | *Id.* |
| | | Dr. Ablon and I acknowledged that Treating Explosive Kids would be co-authored only in the sense that (a) contained material derived and copied from my prior works, (b) contained some new material contributed by me which was not derived from my prior works, and (c) contained only a small amount of new material contributed by Dr. Ablon which was not derived from my prior works.  We both intended, and I intended in particular, that *Treating Explosive Kids* would be a derivative work of *The Explosive Child* and that any independent copyrights Dr. and I might receive as a result of this publication would pertain to the new and original material we contributed, which was not derived from my prior works. | Exh. E, ¶ 25. |
| Dr. Greene seeks relief, as co-owner of the copyright to *Treating* | Amended Verified Complaint, counts II and | <u>Uncontested</u> as to the wording. | |

| | | | |
|---|---|---|---|
| *Explosive Kids*, based on Dr. Ablon's alleged use or misuse of *Treating Explosive Kids* or the copyright relating to it. | III and Count XII at ¶148(a) | <u>Contested</u> as to the implication that the phrase is an admission, as it is contained in a Count pleading alternative relief, and work actually submitted was consistent with "the work as originally anticipated" and therefore not a joint work. | Greene Opposition to Ablon Motion for Partial Summary Judgment, filed simultaneously herewith, at 12-13, and citations therein. |
| Dr. Greene admits that Dr. Ablon drafted some of the 226 pages of Treating Explosive Kids | Amended Verified Complaint par. 30 and September 30, 2011, affidavit of Ross Greene, ¶27 | <u>Contested</u> as to the word "some". Dr. Greene has stated that Dr. Ablon drafted virtually none of the book, and that less than 15 pages authored by him were actually included in the work ultimately submitted to Guilford for publication. | Am. Ver. Compl., Doc. No. 7, ¶ 33. |
| | | "…Dr. Ablon proved entirely unable to meaningfully participate in the drafting of Treating Explosive Kids. Dr. Ablon indicated that he was unable to write at an appropriate model for the intended readership and was having significant difficulty describing many key facets of the content.  After significant delay, Dr. Ablon, rather than delivering an acceptable manuscript, delivered to me at 'attempt' at only one chapter." | Exh. E, ¶ 22. |
| | | "I was compelled thereafter to write the book myself." | *Id.*, ¶ 24. |
| | | "The scant draft materials ultimately provided by Dr. Ablon for inclusion in Treating Explosive Kids were poorly written, lacked focus, and did not accurately represent the CPSA." | *Id.*, ¶¶ 23, 24. |
| | | "In an attempt to salvage for him some co-authorship role, we decided that he (Dr. Ablon) would contribute as original material some treatment vignettes describing some treatment interactions he had encountered, since vignettes of this type would | *Id.* |

| | | | |
|---|---|---|---|
| | | not be derived from any of my preexisting works, and that these would be his only significant contribution. " | |
| Dr. Ablon actually wrote considerable more, including the treatment vignettes, which were drawn from Dr. Ablon's clinical work with his patients. | Ablon Aff. par. 34 and Exh. A thereto | Contested.<br><br>"….Dr. Ablon proved entirely unable to meaningfully participate in the drafting of Treating Explosive Kids.  Dr. Ablon indicated that he was unable to write at an appropriate model for the intended readership and was having significant difficulty describing many key facets of the content. After significant delay, Dr. Ablon, rather than delivering an acceptable manuscript, delivered to me at 'attempt' at only one chapter." | Exh. E, ¶ 22. |
| | | "I was compelled thereafter to write the book myself." | *Id.* ¶ 24. |
| | | "The scant draft materials ultimately provided by Dr. Ablon for inclusion in Treating Explosive Kids were poorly written, lacked focus, and did not accurately represent the CPSA." | *Id.*, ¶¶ 23, 24. |
| | | "In an attempt to salvage for him some co-authorship role, we decided that he (Dr. Ablon) would contribute as original material some treatment vignettes describing some treatment interactions he had encountered, since vignettes of this type would not be derived from any of my preexisting works, and that these would be his only significant contribution. " | *Id.* |
| The prospectus for the book highlighted these treatment vignettes as an important and integral part of the book. | Ablon Aff. Exh. K, RG06032 (next to last paragraph) | Contested.<br><br>The term "highlighted" reflects a subjective critical assessment of the material presented in the book and is not factual.<br><br>"….Dr. Ablon proved entirely unable to meaningfully participate in the drafting of Treating Explosive | Exh. E, ¶ 22. |

| | | | |
|---|---|---|---|
| | | Kids. Dr. Ablon indicated that he was unable to write at an appropriate model for the intended readership and was having significant difficulty describing many key facets of the content. After significant delay, Dr. Ablon, rather than delivering an acceptable manuscript, delivered to me at 'attempt' at only one chapter." | |
| | | "I was compelled thereafter to write the book myself." | Exh. E, ¶ 24. |
| | | "The scant draft materials ultimately provided by Dr. Ablon for inclusion in Treating Explosive Kids were poorly written, lacked focus, and did not accurately represent the CPSA." | Exh. E, ¶¶ 23, 24. |
| | | "In an attempt to salvage for him some co-authorship role, we decided that he (Dr. Ablon) would contribute as original material some treatment vignettes describing some treatment interactions he had encountered, since vignettes of this type would not be derived from any of my preexisting works, and that these would be his only significant contribution. " | Id. |
| Dr. Ablon also wrote Chapter 8 of the book. | Ablon Aff. ¶ 35 | Contested.<br><br>"….Dr. Ablon proved entirely unable to meaningfully participate in the drafting of Treating Explosive Kids. Dr. Ablon indicated that he was unable to write at an appropriate model for the intended readership and was having significant difficulty describing many key facets of the content. After significant delay, Dr. Ablon, rather than delivering an acceptable manuscript, delivered to me at 'attempt' at only one chapter."<br><br>"I was compelled thereafter to write | Exh. E, ¶ 22. |

| | | | |
|---|---|---|---|
| | | the book myself." | |
| | | "The scant draft materials ultimately provided by Dr. Ablon for inclusion in Treating Explosive Kids were poorly written, lacked focus, and did not accurately represent the CPSA." | *Id.,* ¶ 24. |
| | | "In an attempt to salvage for him some co-authorship role, we decided that he (Dr. Ablon) would contribute as original material some treatment vignettes describing some treatment interactions he had encountered, since vignettes of this type would not be derived from any of my preexisting works, and that these would be his only significant contribution. " | *Id.,* ¶ 23, 24. |
| | | By the time *Treating Explosive Kids* was published on October 18, 2005, Dr. Ablon actual contribution to the work was less than fifteen pages in a work consisting of 226 pages of text. | *Id.,* ¶ 27. |
| | | | |

Ross Greene, Ph.D.
By his attorneys,
/s/ Mark S. Resnick_____
Mark S. Resnick, BBO # 559885
The Resnick Law Group, P.C.
Old City Hall
45 School Street
Boston, MA 02108
(617) 722-8383
(508) 749-6031 (fax)

Dated: February 17, 2012

16

CERTIFICATE OF SERVICE

IT IS CERTIFIED that the foregoing document was filed this 17th day of February, 2012 through the ECF filing system and will be sent electronically to the registered participants as identified on the Notice of Electronic Filing.

/s/ Mark S. Resnick