### UNITED STATES DISTRICT COURT
### DISTRICT OF MASSACHUSETTS

———————————————————————
                                            )
**ROSS GREENE,**                            )
                                            )
   **Plaintiff,**            )
                                            )
   **v.**                     )   **Civil Action No. 09-10937-DJC**
                                            )
**J. STUART ABLON and**                     )
**GENERAL HOSPITAL CORPORATION,**           )
**also known as**                           )
**MASSACHUSETTS GENERAL HOSPITAL,**         )
                                            )
   **Defendants.**            )
———————————————————————)

### MEMORANDUM AND ORDER

**CASPER, J.**             December 17, 2012

## I.  Introduction

   The Court recited the factual and procedural background of this case at length in its

recent memorandum and order resolving the defendants' separate motions for partial summary

judgment, Greene v. Ablon, No. 09-10937-DJC, 2012 WL 4104792 at *2-7 (D. Mass. Sept. 17,

2012) ("Greene I"), and will not repeat that history here.  Defendant General Hospital

Corporation d/b/a Massachusetts General Hospital ("MGH") has now moved for preliminary

injunction to prevent Plaintiff Ross Greene ("Greene") from using or representing ownership in

the marks "Collaborative Problem Solving" and "The Collaborative Problem Solving Approach"

(collectively, the "CPS Marks").  Def. Mot., D. 155 at 1.  Alternatively, MGH has moved for an

order of specific performance.  Def. Mot., D. 162 at 1.[1]  For the reasons stated below, the Court

_____

[1] The relief requested in these motions is similar but not identical.  Compare D. 155 Exh. A (requesting an order stating that "Ross W. Greene, his agents, servants, employees, attorneys, and any person or entity acting in active concert or participation with any of the

GRANTS MGH's motion for preliminary injunction, D. 155, subject to the terms in this order and DENIES its motion for specific performance, D. 162, as moot.[2]

## II.    Discussion

### A.    Procedural Developments Since The Court's Order on Summary Judgment

On September 17, 2012, the Court granted partial summary judgment in MGH's favor, ruling inter alia that MGH owns the CPS Marks.  D. 152.  On October 18th, MGH moved for a preliminary injunction, D. 155, asserting this ruling as a basis for granting injunctive relief against Greene to prevent him from claiming ownership rights to or using the CPS Marks.[3]  After the Court issued an order on November 1st "not[ing] the imminent trial date [then scheduled for December 3rd] and deferring a ruling on the motion for a preliminary injunction," D. 160, MGH filed a motion for specific performance "as an alternative to its request for a preliminary injunction inasmuch as irreparable harm is not a requisite to the issuance of an order for specific performance," D. 162 at 1.  The Court granted the parties' joint motion to continue trial to January 14, 2013 for reasons unrelated to this motion, D. 168, and heard argument on December

---

aforementioned persons or entities, are hereby enjoined from using without MGH's prior written approval the [CPS Marks] in relation to goods and/or services relating to a method of treating children and adolescents with behavioral difficulties, and from representing that any of the aforementioned persons or entities has any ownership interests in the CPS Marks") with D. 162 at 1 (requesting an order directing that Greene "specifically perform his contractual obligations under the terms of its [sic: his] employment contract with MGH by refraining from (i) using the CPS Marks to promote his services or (ii) representing that he, or any person or entity affiliated with him, has an ownership interest in the CPS Marks").  Neither motion is "directed to the so-called 'Think:Kids Marks'" also at issue in this lawsuit.  D. 155 at 1 n.2; see D. 162 at 1.

[2] In deciding this matter, the Court has reviewed the parties' motion papers, D. 155-157, 162-63, 172, the parties' status filings, D. 159, 161, 177, 179 and the letters filed after oral argument by MGH and Greene.  D. 181-182.

[3] Although MGH also asserts that it "has established a sufficient basis to obtain summary judgment or a directed verdict as to liability on its Lanham Act claim,"  D. 156 at 2, the Court does not reach this argument.

4th related to several outstanding pre-trial matters including MGH's motion for preliminary injunction, D. 180.

### B.   Standard for Preliminary Injunction

In deciding whether to grant a preliminary injunction, the Court evaluates "(1) the plaintiff's likelihood of success on the merits; (2) the potential for irreparable harm in the absence of an injunction; (3) whether issuing an injunction will burden [Greene] less than denying an injunction would burden [MGH]; and (4) the effect, if any, on the public interest." González-Droz v. González-Colon, 573 F.3d 75, 79 (1st Cir. 2009) (quoting Bos. Duck Tours, LP v. Super Duck Tours, LLC, 531 F.3d 1, 11 (1st Cir. 2008)).  A preliminary injunction is an "extraordinary remedy that may only be awarded upon a clear showing that the plaintiff is entitled to such relief."  Winter v. Natural Res. Def. Council, Inc., 555 U.S. 7, 22 (2008) (citing Mazurek v. Armstrong, 520 U.S. 968, 972 (1997)).

### C.   MGH Has Already Succeeded on the Merits Relevant to the Relief Sought

In its motion for a preliminary injunction, MGH seeks an order enjoining Greene from (1) claiming any ownership interest in the CPS Marks, and (2) using the CPS Marks in relation to goods and/or services relating to a method of treating children and adolescents with behavioral difficulties.  The Court has already determined that MGH has total ownership of the CPS Marks. Greene I at *20 (holding that "MGH is entitled to summary judgment as to its claims that, by the terms of Greene's various employment contracts and the 1995 and 2002 IP Policies imported therein, any ownership interest Greene or the CPS Institute might otherwise have in the CPS Marks . . . belongs to MGH, not Greene or the CPS Center").

Greene argues in opposition to the motion for preliminary injunction that MGH must demonstrate a likelihood of success that the CPS Marks are protectable under § 1125(a) of the

Lanham Act.  D. 157 at 1.  Greene's position is that whether the injunctive remedy now sought by MGH is available depends on whether MGH has shown a high likelihood of success on its counter claim for trademark infringement.  Id. at 2-3 (framing argument as whether MGH has "establish[ed] a claim for infringement" and whether MGH can prove that its marks "are entitled to trademark protection").  But the Court need not reach the issue of MGH's likelihood of success on MGH's counterclaims regarding "Common Law Trademark Infringement" (Count 1), "Violation of the Lanham Act – 15 U.S.C. § 1125 (a)" (Count 2), or "Unfair Competition" (Count 3).  MGH Ans., D. 19 at 24-26.  The Court considers MGH's motion solely upon the first basis for relief asserted by MGH; namely, this Court's prior ruling that MGH owns the CPS Marks (Count 4).

MGH's present ability to prevent Greene from claiming any ownership interest in the CPS Marks or from using the CPS Marks in relation to goods and/or services relating to a method of treating children and adolescents with behavioral difficulties is a consequence of the Court's earlier ruling that "any ownership interest Greene . . . might otherwise have . . . belongs to MGH."  Id.  This is not a matter of trademark infringement, but of the rights that Greene surrendered to MGH as a result of his prior employment contracts that incorporated two versions of the MGH Intellectual Property Policy ("IP Policy").  In other words, whether MGH can successfully bring a trademark infringement suit against Greene or anyone else is a different matter from whether Greene contractually is restricted from using or claiming ownership of the marks, where Greene's employment contract incorporates the language that all trademarks "shall be owned" by MGH, 1995 IP Policy, D. 97-6 at 10, 2002 IP Policy, D. 97-7 at 13.

The case of Murphy Door Bed Co. v. Interior Sleep Sys., Inc., 874 F.2d 95, 101-03 (2nd Cir. 1989) is instructive.  There, a manufacturer of "Murphy" beds sued a former distributor for

breach of contract, trade mark infringement and unfair competition.  Id. at 97.  The Second

Circuit reversed the district court's holding that there had been trademark infringement where as

a matter of law the Murphy term was "generic" and thus not subject to trademark protection.[4]  Id.

at 97, 101.  But the Second Circuit affirmed the district court's grant of an injunction enjoining

the defendant's use of the "Murphy" term where the defendant "had contracted to refrain from

use of the Murphy name in the event of a termination of the distribution agreement and did not

so refrain."   Id. at 102 (citing Overhead Door Corp. v. Nathanson, 291 F. Supp. 961, 963

(W.D.N.C. 1968) (noting that "[m]ost things which people contract not to do . . . are lawful

things which but for the contract they might do freely") (emphasis in original)).  In other words,

Murphy is an example of a court enjoining a party from using a mark as a matter of contract law

without resting its decision on whether the mark was entitled to trademark protection.  Id.  This

Court finds the Murphy court's reasoning persuasive.[5]

    In Murphy, the court cited the language in a distributorship agreement where the

defendant "agree[d] to discontinue the use of the [mark]" on termination of the agreement.  Id. at

98.  Here, the operative language in Greene's employment contracts is that he agreed to give up

---

[4] "Trademark law categorizes proposed marks along a spectrum of distinctiveness, based on their capacity to serve such a source-identifying function.  A mark is classified as:  (1) generic (least distinctive), (2) descriptive, (3) suggestive, (4) arbitrary, or (5) fanciful (most distinctive)." Boston Duck Tours, LP v. Super Duck Tours, LLC, 531 F.3d 1, 12 (1st Cir. 2008) (citing Two Pesos, Inc. v. Taco Cabana, Inc., 505 U.S. 763, 769 (1992).

[5] Greene asserts that the Court cannot "enjoin Dr. Greene from using the marks—even as a matter of contract law—without first establishing that the unregistered [m]arks are entitled to trademark protection," D. 177 ¶ 3 (citing Borinquen Biscuit Corp. v. M.V. Trading Corp., 443 F.3d 112, 116 (1st Cir. 2006)) and that it is "not enough that MGH owns the [m]arks," id. (citing R.R. Salvage of Conn., Inc. v. R.R. Salvage, Inc., 561 F. Supp. 1014, 1019 (D.R.I. 1983)), since "MGH must show the [m]arks distinguish its own services from those of another," id. (citing Boustany v. Bos. Dental Grp., Inc., 42 F. Supp. 2d 100, 105 (D. Mass. 1999).  The Court has reviewed those cases and notes that none of them involved parties bound by a contract, unlike the situation in Murphy, 874 F.2d at 98-100 and unlike the situation presented here.

whatever ownership rights he had in the CPS Marks to MGH.[6]  <u>Greene I</u> at *15-17 (holding that "any ownership interest Greene might otherwise have in the CPS marks belongs to MGH").  The language that Greene accepted in exchange for his employment divested Greene of any ownership in the CPS Marks and recognized MGH's ownership of those marks.  That agreement and the Court's subsequent ruling regarding same provides the basis for MGH's continued ability to prevent Greene from claiming ownership of the marks and from being able to use the marks.

That MGH can now prevent Greene from claiming ownership of the marks is readily apparent from the Court's holding in <u>Greene I</u>.  <u>Id.</u> at *17 (holding that "any ownership interest Greene might otherwise have in the CPS marks belongs to MGH, not Greene").  That Greene is also precluded from using the marks without approval from MGH flows directly from Greene's contractual recognition of MGH's ownership.  This is apparent when one considers what it means to own a trademark.  "To say one has a 'trademark' implies ownership and ownership implies the right to exclude others.  If the law will not protect one's claim of right to exclude others from using an alleged trademark, then he does not own a 'trademark,' for that which all are free to use cannot be a trademark."  J. Thomas McCarthy, <u>McCarthy on Trademarks and</u>

---

[6] As described in <u>Greene I</u> at *13-14, Greene was bound by language "[u]nder the 1995 IP Policy [that] '[t]rademarks shall be owned by MGH if they are created by Members in the course of their employment or affiliation with an Institution or if they are used to identify any product or service originating with or associated with an Institution,' 1995 IP Policy § 14.0, D. 97-6 at 10 . . . [and language under the 2002 IP Policy that] '[t]rademarks shall be owned by an Institution if they are created by Members in the course of their employment or affiliation with an Institution, if they are used to identify any product or service originating with or associated with an Institution, or pertain to significant Institutional Activities.' 2012 IP Policy § 14.0, D. 97–7 at 13."  <u>Greene I</u> at *15.  The Court found that MGH owned the CPS Marks where they "were repeatedly used to identify the services provided by MGH's Collaborative Problem Solving Institute."  <u>Id.</u> at *17.  The Court also held that MGH owned the CPS Marks where they "pertain[ed] to significant activities that clearly received both financial support from MGH and received outside funding that was subsequently administered by MGH."  <u>Id.</u>

Unfair Competition § 16:35 (4th ed. 1999 & Supp. 2012) (hereinafter "McCarthy") (quoting In re Deister Concentrator Co., 289 F.2d 496, 501 n.5 (C.C.P.A. 1961)).   In other words, by Greene's contractual recognition of MGH's ownership, Greene has necessarily consented to MGH's right to exclude Greene.

That result holds even where Greene no longer is employed by MGH, where Greene's past recognition of MGH's ownership rights logically must survive beyond his termination from MGH.  To hold otherwise would undermine the parties' contract, where MGH could enjoy the whole panoply of ownership rights with respect to Greene while Greene was an employee, but what it means to "own" the CPS Marks would change if Greene was no longer employed.  That result would be untenable.

Accordingly, where this Court has already ruled that MGH owns the CPS Marks, MGH has succeeded on the merits of its claim for declaratory judgment, see 28 U.S.C. § 2202 (2006) (enabling a court to effect "necessary or proper relief based on a declaratory judgment"), and the Court concludes that MGH has satisfied its showing of likelihood of success on the merits for the purposes of its motion for preliminary injunction.

### D.   Other Factors to Grant Preliminary Injunction

Having found that MGH has satisfied the first factor for preliminary injunction, the Court addresses the remaining factors warranting preliminary injunction.  See, e.g., State Farm Mut. Auto. Ins. Co. v. Am. Rehab & Physical Therapy, Inc., 376 Fed. Appx. 182, 184 (3rd Cir. 2010) (evaluating all four factors even where movant "undoubtedly has prevailed on the merits of its case").  Here, MGH would face irreparable harm as a result of Greene's continued use of the CPS Marks.  Any such use in ways not authorized by MGH may damage MGH's reputation and goodwill.  See Ross-Simons of Warwick, Inc. v. Baccarat, Inc., 102 F.3d 12, 20 & n.7 (1st Cir.

1996) (holding that damage to reputation and goodwill was sufficient to justify preliminary injunctive relief). Namely, Greene is currently using the CPS Marks in ways not directed by MGH and not under its auspices, despite its ownership of same. The balance of equities also favor MGH where Greene's continued use of the marks is in direct contravention of his contractual obligations to MGH, where Greene has contractually recognized that MGH has the exclusive ownership of the CPS Marks. Because Greene is bound by the effects of his earlier contractual undertaking, an injunction will burden Greene less than denying an injunction would burden MGH. Finally, "the grant of this preliminary injunction is in the public's interest, as 'the public has an interest in the enforcement of judgments.'" Tennenbaum Capital Partners v. Kennedy, No. 09-mc-194, 2012 WL 748256 at *4 (E.D. Pa. Feb. 10, 2012) (quoting State Farm, 376 Fed. Appx. at 184) (granting preliminary injunction to enforce award of summary judgment) adopted by Tennenbaum Capital Partners v. Kennedy, No. 09-194, 2012 WL 748303 at *1 (E.D. Pa. Mar. 7, 2012).

### E. Conclusion

An injunction must be narrowly tailored to eliminate only the specific harm alleged. See E. & J. Gallo Winery v. Gallo Cattle Co., 967 F.2d 1280, 1297-98 (9th Cir. 1992) (modifying injunction to remove restrictions on the use of trademarked terms). MGH's motion for preliminary injunction, D. 155, is GRANTED insofar as Greene is hereby enjoined from representing that he or any entity now affiliated with him has an ownership interest in the CPS Marks. Greene is also hereby enjoined from using the CPS Marks in relation to goods and/or services relating to a method of treating children and adolescents with behavioral difficulties without written permission from MGH. This injunction will remain in effect until further order by the Court. MGH's motion for specific performance, D. 162, is DENIED as moot.

**So Ordered.**

/s/ Denise J. Casper
United States District Judge